**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Andre WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Argued May 4, 2013.

Filed July 9, 2013.

Reargument Denied Sept. 23, 2013.

Mark Cichowicz, Public Defender, Philadelphia, for appellant.

Michael L. Erlich, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., LAZARUS, J., and COLVILLE, J.*

## OPINION BY STEVENS, P.J.

Andre Williams (hereinafter "Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on March 27, 2012, at which time he received an aggregate sentence of one and one half (1½) years to five (5) years in prison following his convictions of Forgery, Theft Receiving Stolen Property, Theft by Unlawful Taking and Theft by Deception.[1] Upon our review of the record, we affirm.

The trial court aptly set forth the facts herein as follows:

On April 5th, 2011 at approximately 5:00 p.m., Philadelphia Police Officer Tevin Garrett was on duty in the area of 1500 Market Street. N.T. 11/8/11, p. 6. Officer Garrett testified that from 1994 to 2007, he was assigned to the pick pocket detail where he learned that pick pocketing occurs most frequently at various locations around the city including the aforementioned block. *Id.* at 6. Around 5:00 p.m. Officer Garrett observed [Appellant] walking towards his patrol car. Upon coming up directly next to the Officer's Patrol vehicle, [Appellant] placed a Banana Republic shopping bag and another unidentified shopping bag on the ground directly next to the vehicle. N.T., 2/6/2012, p. 15. Officer Garrett [2] then approached [Appel-

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 4101(a)(1); 18 Pa.C.S.A. § 3925(a); 18 Pa.C.S.A. § 3921(a); 18 Pa. C.S.A. § 3922(a)(1), respectively.

2. Officer Garrett also testified he had been working along with Officer Garner, and the two, who had been in their car, exited when Appellant set his shopping bag next to their vehicle. Officer Garrett approached Appellant on his left side, and Officer Garner approached him on his right side.

lant] and attempted to engage him in conversation. *Id.* The Officer testified that he had had approximately eight previous encounters with [Appellant] at various destinations in the Center City area for forgery and theft. *Id.* at 8 and 10. [Appellant] never answered the question of where he was coming from and gave a false name when asked to identify himself. *Id.* Officer Garrett then reached into the top of the shopping bag and pulled out a receipt. *Id.* After seeing that the items in the bag were purchased with a credit card, and that the last four digits of the card were 0038, Officer Garrett asked [Appellant] to produce the credit card. *Id.* [Appellant] initially produced neither a credit card nor a wallet. *Id.* at 9. When this [Appellant] did ultimately produce a wallet, Officer Garrett found a Master Card identified with the name Nancy Campbell and containing the last four digits, 0038. *Id.* Additionally from the wallet was recovered a number of other cards in the name of Nancy Campbell as well as eight SEPTA monthly transpasses and one monthly Trailpass. NT 2/6/12 at 22. At this time Officer Garrett did place [Appellant] under arrest. *Id.* at 20.

On the same date, April 5, 2011, Nancy Campbell testified that she was in Center City Philadelphia on a business trip, staying at the Warwick Radisson Hotel. *Id.* at 25. At approximately 12:30 in the afternoon, Ms. Campbell looked in her purse and noted that her wallet was inside. Around this time, she went to the hotel's coffee bar where she hung her purse from the back of her chair. *Id.* at 27, 32. While sitting in the coffee bar, Ms. Campbell did see [Appellant], previously unknown to her, standing near the valet booth by a door which exits to the street. *Id.* at 32. At approximately 6:30 that evening, the com-

plainant Ms. Campbell became aware that her wallet was no longer in her possession and did eventually come to identify and pick up the contents of her wallet from the police. *Id.* at 30. Ms. Campbell did not give [Appellant] or anyone else permission to possess or use the cards in her wallet. *Id.* at 33. She testified that approximately $1,200 was charged to her credit card at Banana Republic on the day in question without her authorization. *Id.* at 35. In addition, that day her credit card was used to purchase a SEPTA monthly pass, and a Sears gift card, all without her authorization. *Id.*

In an order filed on November 10, 2011, the trial court denied Appellant's motion to suppress. Appellant waived his right to a jury trial, and the trial court found Appellant guilty of all charges following a waiver trial. Appellant was sentenced on March 27, 2012, and filed a timely notice of appeal on April 12, 2012. In an Order filed on April 18, 2012, the trial court directed Appellant to file a concise statement of the errors complained of on appeal, and Appellant did so on May 4, 2012. Appellant was granted an extension of time in which to file a supplemental statement of errors upon his receipt of all notes of testimony, and he filed the same on July 9, 2012.

■■■■■ In his brief, Appellant raises the following Statement of Questions Involved:

A. Did not the lower court err in failing to suppress all physical evidence where [Appellant] was detained and items were seized from him, including a receipt, a wallet, the contents of that wallet and merchandise, and where [Appellant] was detained without at least reasonable suspicion and his property seized without probable cause?

B. Was not the evidence insufficient to prove that [Appellant] committed the crime of forgery in that no evidence was presented as to how [Appellant] purportedly used stolen credit cards to make any purchases, and thus no evidence was presented to prove beyond a reasonable doubt that [Appellant] altered a writing, that he made, completed, executed, authenticated, issued or transferred a writing that purported to be the act of another who did not authorize the act, or that he uttered a writing known to be forged in the manner specified by the forgery statute.

Brief for Appellant at 3. We review Appellant's first claim under the following standard of review:

[I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Brown,* 64 A.3d 1101, 1104 (Pa.Super.2013) (citation omitted). In addition,

[o]ur courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a particular search or seizure conforms to the requirements of U.S. CONST. amend. IV and P.A. CONST. art. I, § 8.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn,* 761 A.2d 176, 181 (Pa.Super.2000) (quoting *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (citations and footnotes omitted)).

[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether or not the citizen-subject has been seized. Instances of police questioning involving no seizure or detentive aspect (mere or consensual encounters) need not be supported by any level of suspicion in order to maintain validity. Valid citizen/police interactions which constitute seizures generally fall within two categories, distinguished according to the degree of restraint upon a citizen's liberty: the investigative detention or *Terry* stop, which subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of an arrest; and a custodial detention or arrest, the more restrictive form of permissible encounters. To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion; whereas, a custodial deten-

tion is legal only if based on probable cause. To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889–90 (2000) (internal citations and footnotes omitted).

*Commonwealth v. Lyles*, 54 A.3d 76, 79–80 (Pa.Super.2012). Also,

> as a general rule, "a search warrant is required before police may conduct any search." (*Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 900 (Pa.1995)). Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable. *Id.* (citing *Horton v. California*, 596 [496] U.S. 128, 134 n. 4 [110 S.Ct. 2301, 110 L.Ed.2d 112] (1990)). This is the law under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* (citing *Commonwealth v. McCree*, 592 Pa. 238, 924 A.2d 621, 627 (Pa.2007)); *see Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 656 (Pa.2010).

> Among the enumerated exceptions to the warrant requirement is the "plain view doctrine," . . . .

[The plain view] doctrine permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and [ ](3) the officer has a lawful right of access to the object. *Commonwealth v. Brown*, 23 A.3d 544 (Pa.Super.2011) (citing *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)); *Commonwealth v. McCullum*, 529 Pa. 117, 602 A.2d 313, 320 (Pa.1992); *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075, 1079 (Pa.1998).

In determining whether the incriminating nature of an object is "immediately apparent" to a police officer, courts should evaluate the "totality of the circumstances." *Id.* (citing *Commonwealth v. Ballard*, 806 A.2d 889, 892 (Pa.Super.2002)). Although courts have recognized that a police officer can never be certain that an object in plain view is incriminating, the officer's belief must be supported by probable cause. *Id.* at 4–5 (citing *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1049 (Pa.1995)). *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa.Super.2013) (citations to trial court opinion omitted).

 Herein, Appellant maintains that "the police approached [Appellant], effectuated a detention of [Appellant] without at least reasonable suspicion, seized property of [Appellant] without probable cause (initially, a store receipt), continued to detain [Appellant] while exploiting their initial illegal seizure of the property receipt to seize more evidence, and finally formally arrested [Appellant]." Brief for Appellant at 12. As such, the initial issue presented for our review concerns whether an investigative detention occurred when Officer Garrett first approached Appellant and engaged him in conversation, or whether

such contact constituted only a mere encounter. In this regard, our Supreme Court has held that pursuant to governing Fourth Amendment law, an arresting officer's request for identification does not, by itself, transform his mere encounter with an individual into an unconstitutional investigatory detention. *Commonwealth v. Au*, 42 A.3d 1002, 1007 (Pa.2012). *See also, Lyles, supra.*

Officer Garrett, an officer experienced in investigating pick pockets, knew the area of 15th and Market Streets to be one where these types of crimes frequently occurred. He was familiar with Appellant whom he had previously arrested for forgery and theft offenses approximately eight times prior to April 5, 2011. After observing Appellant place a Banana Republic shopping bag and another shopping bag next to his police cruiser, Officer Garrett, along with his partner, approached him and simply asked him his name and destination. N.T., 11/8/11 at 7–9. Officer Garrett did not tell Appellant that he was not free to leave. There was no indication that Officer Garrett in any way intimidated or threatened Appellant or suggested there would be any adverse consequence if he failed to identify himself. Nevertheless, Appellant did not respond when Officer Garrett asked from where he was coming, but Appellant did give him a false name. As such, up to this juncture, the events that transpired between the two constitute a mere encounter. *See Au* and *Lyles.*[3]

■■■■ Next, Officer Garret looked at the Banana Republic Bag and spotted a receipt resting right on the top of it. Officer Garrett reached into the bag and removed the receipt at which time he noticed that the items therein had been paid for with a credit card. He then asked Appellant to produce the credit card, which Appellant was unable to do. Instead, he claimed he did not have a wallet. *Id.* at 8–9. When Officer Garrett asked Appellant to produce the credit card a second time, Appellant voluntarily handed Officer Garrett a wallet, which contained Ms. Campbell's Master Card. At that point, Appellant was handcuffed and taken to Central Detectives for processing. *Id.* at 9.

The trial court determined that up to and throughout the point at which Officer Garrett asked Appellant for his wallet, "their interaction can be characterized as a lawful and reasonable 'mere encounter.'" Trial Court Opinion, filed 7/26/12 at 4 (citation omitted). In the alternative, the trial court reasoned that:

if the Officer's act of asking to view [Appellant's] wallet takes these circumstances from a mere encounter to an investigative detention, Officer Garrett clearly possessed the requisite level of reasonable suspicion based on articulable facts that criminal activity was afoot and that [Appellant] was involved. *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). The clearly articulable facts are that [Appellant] was known to this Officer as a result of eight prior encounters for forgery and theft, more commonly known as pickpocketing. N.T. 11/8/2012, p. 8. The specific area where Officer Garrett encountered this [Appellant] is known to the Officer, as a result of many years of training and on the ground experience, for pickpocketing. *Id.* at 6. [Appellant] gave a false name to the Officer and was evasive when asked from where he had come. *Id.* at 8, 10. Finally, [Appellant's] bag contained a receipt for items used with a credit card. *Id.* it is the totality of these

---

**3.** This Court notes that considering the totality of the circumstances, *supra,* Appellant did not necessarily have a reasonable expectation of privacy in the shopping bag.

circumstances that gave the Officer reasonable suspicion to detain [Appellant] for investigation.

Trial Court Opinion, filed 7/26/12, at 4. The trial court maintained that as Officer Garrett viewed the receipt "clearly at the top of the shopping bag," he "lawfully removed the receipt under the plain view doctrine." *Id.* at 6.

To the contrary, Appellant argues that Officer Garrett, who lacked reasonable suspicion to detain Appellant, certainly did not have the probable cause necessary to seize his property—namely the sales receipt. Brief for Appellant at 14. Appellant further asserts that:

[a]rguably, [Appellant's] denial that he had his wallet and/or the credit card used to purchase the store merchandise obviously in his possession buttressed the officers' cause to detain [Appellant]. It has been argued above that [Appellant] was placed in custodial detention when the officer seized the sales receipt. However, even if [Appellant] had only been subject to a legal investigatory detention after the sales receipt was seized, the insistent demand by the officer that [Appellant] produce the credit card used to make the store purchases elevated the level of detention from investigative to custodial. In other words, even if [Appellant] had not been subjected to the functional equivalent of an arrest at the time the sales receipt was seized, he was surely subjected to custodial detention by the officer's continued demand that he produce the credit card reflected on that sales receipt.

Brief for Appellant at 20.

Thus, we must next assess whether the trial court erred in finding that Officer Garrett's observations and the totality of the attendant circumstances rendered it immediately apparent that the items in the shopping bags were contraband, thus giving Officer Garrett probable cause to suspect that a crime had been or was being committed so as to warrant the search and seizure of the sales receipt.

As we discussed above, Appellant had not been detained prior to the time Officer Garrett removed the receipt from Appellant's shopping bag, and reasonable suspicion was not necessary for the Officer to approach him. But even if the interaction were not a mere encounter at this point, we find Officer Garrett had reasonable suspicion to detain Appellant at this time.

Officer Garrett, who had approximately thirteen years of experience in investigating criminal offenses committed by pickpockets in and around the area of 1500 Market Street, also had had prior contact with Appellant on numerous occasions in connection with forgery and theft offenses. Appellant lied in response to Officer Garrett's inquiry regarding what he was doing, and he provided Officer Garrett with a false name. This elusive behavior coupled with the high crime area where Officer Garrett found Appellant and his prior contact with him provided the reasonable suspicion necessary for Officer Garrett to detain Appellant in an effort to investigate the manner in which Appellant had made his purchases.

In doing so, Officer Garrett took only the receipt and did not delve any further into to bag, which Appellant was no longer holding, or in any way manipulate the merchandise therein. Furthermore, as we stated above and the trial court notes in its Opinion, the plain view doctrine allows for the warrantless seizure of evidence where an officer sees such evidence from a lawful vantage point and it is immediately apparent to him or her under the totality of the circumstances that the object is incriminating. Trial Court Opinion, filed 7/26/12, at 6; *Whitlock, supra.* The trial court stressed that Officer Garrett testified the

receipt had been on top of the bag and, therefore, was immediately accessible and in view. The trial court reasoned that: "Officer Garrett's experience with this [Appellant] as well as his background on pickpocket patrol provides him with the clear belief that the object observed is incriminating. When Officer Garrett viewed the receipt in the possession of this known pick pocket [sic], he noted that the purchase was made with a credit card." Trial Court Opinion, 7/26/12, at 4.

■ Officer Garrett next asked Appellant to produce the credit card Appellant had used to make the purchase. It is noteworthy that while Appellant characterized Officer Garrett's request for his wallet as an "insistent demand" his uncontradicted testimony revealed that he "asked" for the wallet and he described the tenor of the conversation as "a very direct, nice tone. [He] wasn't yelling." N.T., 11/08/11, at 9. Appellant voluntarily relinquished the wallet which contained Ms. Campbell's credit card that Appellant had used to make the purchase in Banana Republic as well as other cards belonging to her. Officer Garrett's discovery of these items provided him with the probable cause necessary to place Appellant under arrest. As such, we find that the trial court did not err in failing to suppress all physical evidence.[4]

■ Appellant next presents a challenge to the sufficiency of the evidence.

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423,

555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa.Super.2013). In addition, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super.2012) (citation omitted), *appeal denied,* —— Pa. ——, 63 A.3d 1243 (2013).

Herein, Appellant asserts that the evidence was insufficient to sustain his conviction for forgery. The forgery statute reads, in pertinent part, as follows:

---

4. This Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis. *In re Jacobs,* 15 A.3d 509 n. 1 (Pa.Super.2011).

(a) **Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) Alters any writing of another without his authority;

(2) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or Utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

(b) **Definition.**—As used in this section the word "writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, electronic signatures and other symbols of value, right, privilege, or identification.

18 Pa.C.S.A. § 4101(a), (b).

Appellant maintains that as the only evidence the Commonwealth presented on this charge was the fact that Appellant was in possession of the credit cards and that Ms. Campbell received bills and/or a statement from credit card companies indicating unauthorized purchases had been made. Appellant states that while he may have been guilty of theft, he cannot be found to have committed the crime of forgery in that "no evidence was presented that [Appellant] had signed the complainant's name, a fictitious name while claiming to have authority from the complainant, his own name, or any name at all." Brief for Appellant at 22–24.

On this issue, the trial court reasoned as follows:

In contemplating the forgery statute on its face, a conviction for forgery can be supported by the act of transferring a writing claiming to be the act of another. By handing the store clerk a credit card, signed by the complainant and without her permission, [Appellant] did transfer a writing which in this case is the complainant's signature on the back of the credit card, while purporting to be the complainant. As will be described below, the fact that [Appellant] did present the complainant's credit card in Banana Republic is strongly supported by circumstantial evidence. This in and of itself provides ample evidence to support a conviction for forgery.

In addition, the court heard testimony of significant circumstantial evidence to support the forgery conviction based on an alternative section of the forgery statute that requires the [Appellant] execute (rather than transfer) a writing. It is reasonable for the court to take judicial notice of the fact that in 2011, when a credit card is used to make a purchase in a store, the purchaser must in some form, whether traditionally on paper, or electronically on a screen, provide a signature for their [sic] purchase. The doctrine of judicial notice for matters of common knowledge is an accepted matter of law in Pennsylvania and is "intended to avoid the necessity for the formal introduction of evidence in certain cases where there is no real need for it.—where a fact is so well established as to be a matter of common knowledge." *Commonwealth v. Brown*, 312 Pa.Super. 383, 385 [458 A.2d 1012] (Pa.Super.1983). With this judicial notice in mind, the Commonwealth, in order to prove that [Appellant] did commit the crime of forgery, needed to prove

that [Appellant] did use the complainant's credit card to make a purchase. In evidence was the fact that the complainant's credit card went missing during the course of approximately six hours and that she did not give permission to [Appellant] to use the card. N.T., 2/6/1012, p. 30, 33. The complainant also testified that she received a bill from her credit card company which reflected that on the day in question, an unauthorized individual made purchases from Banana Republic in the amount of approximately $1,200 (N.T. 2/6/2012, p. 34, 35). [Appellant] was stopped with the complainant's credit card (to which the aforementioned $1,200 had been charged) in his possession as well as a Banana Republic bag with a receipt containing the last four digits of a credit card matching the complainant's credit card in his possession. Circumstantial evidence does show that [Appellant] took the complainant's credit card and went to Banana Republic where he made a purchase with the card that necessitates a signature. This circumstantial evidence does prove beyond a reasonable doubt that [Appellant] committed the crime of forgery.

Trial Court Opinion, filed 7/26/12, at 8–9.

Ms. Campbell further testified that she saw Appellant on April 5, 2011, while on a lunch break in a coffee bar and that while she was there her purse, containing her wallet, had been hanging on the back of her chair. N.T., 2/6/12, at 31–32. She did not make any purchases in Banana Republic that afternoon and had given no one permission to take or use her credit cards on that date. *Id.* at 35, 37.

Upon our review of the record and viewing the evidence in a light most favorable to the Commonwealth as verdict winner, we agree with the trial court's analysis and find the evidence presented was sufficient to sustain Appellant's Forgery conviction.

Judgment of sentence affirmed.

COLVILLE, J., FILES A
DISSENTING OPINION:

DISSENTING OPINION BY
COLVILLE, J.:

I dissent.

Among his several convictions, Appellant was found guilty of forgery. More specifically, Appellant was convicted of violating 18 Pa.C.S.A. § 4101(a)(1). Subsection 4101(a)(1) states, "A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor . . . alters any writing of another without his authority[.]" 18 Pa.C.S.A. § 4101(a)(1).

Under his second issue, Appellant contends, *inter alia,* that the Commonwealth failed to present sufficient evidence to prove that he "altered a writing of another without permission[.]" Appellant's Brief at 24. My review of the record confirms Appellant's contention.

The trial court and the Majority both acknowledge that Appellant was convicted of violating Subsection 4101(a)(1). Trial Court Opinion, 07/26/12, at 1 ("Following a motion to suppress . . . and a non-jury trial . . ., [Appellant] was convicted of 18 Pa.C S. § 4101(a)(1) (2012) Forgery (F3) . . . ."); Majority Opinion at 620 n. 1 (noting that Appellant was convicted of violating 18 Pa.C.S.A. § 4101(a)(1)). Yet, in determining that the evidence was sufficient to support Appellant's forgery conviction, the trial court concluded that the Commonwealth proved that Appellant executed or transferred a writing claiming to be an act of another. (Trial Court Opinion, 07/26/12, at 7–9). Stated differently, the court found that the evidence was suf-

ficient to support a conviction under 18 Pa.C.S.A. § 4101(a)(2).[1] The Majority agrees with the trial court's analysis. Majority Opinion at 618–19. Because Appellant was not convicted of violating Subsection 4101(a)(2), I cannot agree with the trial court's analysis.

Regarding Appellant's first issue, I believe the trial court erred by denying Appellant's motion to suppress. Officer Garrett testified that he reached into the bag and grabbed the receipt. N.T., 11/08/11, at 8. He, however, did not testify that it was immediately apparent to him that the receipt was incriminating. The officer did not notice that the receipt indicated that the objects in the bag were purchased with a credit card until after he grabbed the receipt. *Id.* Thus, I cannot agree with any conclusion that the officer's seizure of the receipt was permissible under the plain view doctrine.

Moreover, the record establishes that two officers approached Appellant, with one officer at each of his sides. *Id.* at 7. Officer Garrett asked Appellant from where he was coming. *Id.* Appellant did not give a response. *Id.* at 7–8. The officer then asked Appellant his name, and Appellant gave him the wrong name. *Id.* at 8. At that point, the officer reached into the bag and grabbed the receipt. *Id.*

In my view, upon the grabbing of the receipt, after the two officers approached and questioned Appellant, the officers displayed a show of force such that a reasonable person would not have felt free to leave. Thus, at this point, I believe the officers subjected Appellant to a custodial detention. I further conclude that the officers lacked probable cause to justify the seizure of the receipt and Appellant. Thus, the evidence the officers obtained from this point forward was acquired in an unconstitutional manner. Consequently, I agree with Appellant that the trial court erred by denying his motion to suppress.

For these reasons, I would reverse Appellant's judgment of sentence as it relates to his forgery conviction. I also would reverse Appellant's forgery conviction. In addition, I would vacate the remainder of Appellant's judgment of sentence, vacate the remaining convictions, and reverse the order denying his motion to suppress. I would remand the matter to the trial court for further proceedings consistent with this Dissenting Opinion.

---

1. Subsection 4101(a)(2) states:

 A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor ... makes, completes, **executes**, authenticates, issues or **transfers** any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed[.]

 18 Pa.C.S.A. § 4101(a)(2) (emphasis added).