J-S23005-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WAVERLY BRIDGES, | : | |
| | : | |
| Appellant | : | No. 2963 EDA 2013 |

Appeal from the Judgment of Sentence August 27, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0005307-2012

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MAY 15, 2015**

Waverly Bridges ("Bridges") appeals from the judgment of sentence imposed following his convictions of aggravated assault and possessing an instrument of crime.[1]  On appeal, Bridges challenges only the sufficiency of the evidence supporting his aggravated assault conviction.  Following our review, we affirm.

The trial court aptly summarized the facts underlying Bridges' convictions as follows:

> The evidence at trial established that James Haynes worked at the Village Food Court, a delicatessen located on the 3500 block of Germantown Avenue, only a short distance from Temple University Hospital. Mr. Haynes responsibilities included cooking, cleaning, and keeping the store inventory stocked. On February 27, 2012, Mr. Haynes began work at 5 p.m.  Around

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907.

*Retired Senior Judge assigned to the Superior Court.

that time, he first encountered [Bridges]. [Bridges] was acting erratically and fell into a small girl and Mr. Haynes. [Bridges] was unpleasant and appeared drunk. Mr. Haynes instructed one of his coworkers not to serve [Bridges] any alcohol. At this point, [Bridges] became upset and left the store.

Later that evening, Mr. Haynes encountered [Bridges] again, this time outside of the store. Mr. Haynes had walked outside around 9 p.m. to change the trash bag in the refuse container. Mr. Haynes had just replaced the bag and when he turned, [Bridges] was standing there and hit him. At first, Mr. Haynes believed that [Bridges] had only struck him with his fist; however, when he tried to speak, Mr. Haynes testified that "[his] whole mouth opened up." He then saw the knife in [Bridges'] hands. Mr. Haynes ran into the store, saw the extent of his wound, put a towel over his face, and asked the night manager to call the police. Mr. Haynes face was cut from the bottom of his lip to the right side of his nose. Mr. Haynes walked the short distance to the emergency room at Temple Hospital.

A short time later, Mr. Haynes saw [Bridges] in the emergency room. [Bridges] was handcuffed to a wheelchair and upon seeing Mr. Haynes began yelling: "I cut him in the face. I'll stab him again. I'll kill him next time."

Mr. Haynes received six stitches on the top of his lip and six on the bottom, along with treatment for his nose. Mr. Haynes has pain in the area of his wound and a scar on his lip and a permanent slash in his nose. At trial, Mr. Haynes positively identified the knife recovered from the scene as the knife [Bridges] used to cut him.

Detective James Brooks, of the Philadelphia Police Department, responded to reports of a stabbing at the 3500 block of Germantown Avenue. Detective Brooks arrived at the scene and took photographs of blood on the pavement in front of the

store near the entrance. Detective Brooks also noted that a knife was recovered from the [entrance to the emergency room at Temple University Hospital], but no fingerprints were available because it was moved by Temple University police. The knife was collected as evidence by police officer Terrence Mulvey. … .

Police Officer James Boone[] responded to Temple Hospital after reports of a stabbing. As Officer Boone arrived at the emergency room he observed a chaotic scene. Mr. Haynes had stab wounds to his face and [Bridges] was sitting in a wheelchair. Mr. Haynes was yelling[,] "That guy just stabbed me!" While [Bridges] was screaming[,] "You're lucky I didn't kill you asshole. When I get out of jail, I'm going to find you, kill you!" Officer Boone noted that the defendant was shouting and flailing his arms and seemed intoxicated.

Trial Court Opinion, 5/21/14, at 2-3.

A jury convicted Bridges of the above-mentioned offenses and the trial court subsequently sentenced him to a term of ten to twenty years of incarceration for aggravated assault and a consecutive term of one to five years of incarceration for possessing an instrument of crime. The trial court denied Bridges' post-sentence motion, and this timely appeal followed.

Bridges argues that the evidence was insufficient to support his aggravated assault conviction.

A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences

- 3 -

> therefrom upon which, if believed, the fact finder properly could have based its verdict. … In addition, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."

*Commonwealth v. Williams*, 73 A.3d 609, 617 (Pa. Super. 2013) (citations omitted).

The statute under which Bridges was convicted provides that "[a] person is guilty of aggravated assault if he[] attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."[2]  18 Pa.C.S.A. § 2702(a)(1).  Thus, per the clear language of the statute, "where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Commonwealth v. Alexander*, 383 A.2d 887, 889 (Pa. 1978).  "Because direct evidence of intent is often unavailable, intent to cause serious bodily injury may be shown by the circumstances surrounding the attack." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007).  "In determining whether intent was proven from such circumstances, the fact finder is free to

---

[2]  "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

- 4 -

conclude the accused intended the natural and probable consequences of his actions to result therefrom." *Id.* (citation omitted).

> Circumstances deemed probative in this inquiry have included evidence that the assailant was disproportionately larger or stronger than the victim, that the assailant had to be restrained from escalating his attack, that the assailant had a weapon or other implement to aid his attack, or that the assailant made statements before, during, or after the attack which might indicate his intent to inflict further injury. [] *Alexander*, [] 383 A.2d [at] 889 []. Depending on the circumstances, "even a single punch may be sufficient." [*Commonwealth v.*] *Dailey*, 828 A.2d [356,] 360 [Pa. Super. 2003]. *See also Alexander*, [] 383 A.2d at 889 ("We hasten to add that a simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.").

*Id.* at 661-62.

The evidence of record, when viewed in the light most favorable to the Commonwealth, as our standard of review requires, establishes that at approximately five o'clock on the night in question, Bridges entered the deli in which Mr. Haynes worked. N.T., 7/10/13, at 45. Bridges was acting "out of order," and, believing that Bridges was intoxicated, Mr. Haynes told his co-worker not to sell Bridges any alcohol. *Id.* at 45-47. Bridges was upset by this directive, but left the deli. *Id.* at 48. As he was preparing the store to close, Mr. Haynes went outside to replace the bag in the trashcan. *Id.* at 49. As he attempted to place a new bag in the trashcan, he turned around

- 5 -

and saw Bridges. *Id.* Bridges hit him once in the face and Mr. Haynes pushed him away. *Id.* As Mr. Haynes attempted to speak, his "whole mouth just opened up." *Id.* At that moment, he saw a knife in Bridges' hand. Mr. Haynes ran back into the store and signaled for his co-worker to call the police. *Id.* at 51. The victim cleaned himself up and, after assessing the extent of his injury, walked the hospital for medical care. *Id.* at 51. Mr. Haynes' face was slit from the bottom of his lips, across his mouth up to and including part of his nose. *Id.* When he arrived at the hospital, he saw Bridges handcuffed to a wheelchair with a bleeding injury to his head.[3] *Id.* at 53-54. As both men waited for medical attention, Mr. Haynes began shouting that Bridges cut him, and Bridges began shouting that he would kill Mr. Haynes. *Id.* at 54; N.T., 7/11/13, at 31. This evidence establishes that Bridges hit his victim in the face with a weapon; that the victim fled before Bridges could continue his attack; and that Bridges made statements following the attack of his intent to cause not just further injury, but death. We conclude that under these circumstances, the evidence is sufficient to support the inference of the intent to cause serious bodily harm.

Bridges argues that the evidence is insufficient to establish that he attempted to cause serious bodily injury because he hit the victim only once.

---

[3] Bridges received a four centimeter laceration to his head when, after he attacked Mr. Haynes, "other workers of the store chased [him] down and assaulted him." N.T., 7/11/13, at 43.

Bridges' Brief at 10. He concedes that in some situations intent to cause serious bodily harm may be inferred from a single blow, but that under the circumstances in his case, no such inference can be made. ***Id.*** at 10-15. While making this argument, however, Bridges seemingly ignores the fact that the single blow was made with a knife and minimizes the threats that he made against Mr. Haynes in the hospital.[4] ***See id.*** at 13-14. We are not persuaded by his argument. As recounted above, the circumstances in this case provide a valid basis for an inference of intent to cause serious bodily injury. ***See Bruce***, 916 A.2d at 662. Bridges' argument to the contrary cannot prevail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015

---

[4] For instance, Bridges argues that there is no evidence that "the blow was delivered with particular viciousness," and that "[a]bsent other circumstances tending to establish this intent, [the inference of intent to cause serious bodily injury] is impermissible." Bridges' Brief at 15. This exhibits a shocking blindness to the obvious "other circumstances" of the knife and statements made in the hospital.