J-S51040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM MAHLENBROCK, | |
| Appellant | No. 3511 EDA 2014 |

Appeal from the Judgment of Sentence December 3, 2014
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0006998-2013

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                     **FILED AUGUST 18, 2015**

Appellant, William Mahlenbrock, appeals from the judgment of sentence imposed following his bench conviction of driving under the influence of alcohol, highest rate.[1]  We affirm.

The trial court aptly set forth the factual history of this case as follows:

> On May 29, 2013[,] at approximately 11:55 p[.]m[.], Lower Merion Township Patrol Officer Jeffery Seamans received a report of a disturbance.  A caller, known to the police, reported that a white male fled from the scene of a disturbance behind the Bryn Mawr Car Wash in a dark green Sport Utility Vehicle (SUV).
>
> Officer Seamans arrived at the scene less than five minutes later, where he began searching the surrounding area

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(c).

for the dark green vehicle. Soon after, Officer Seamans saw an occupied dark colored SUV, parked across two parking spots, in the back of an unlit municipal parking lot approximately two blocks from the reported disturbance. Officer Seamans then pulled into the parking lot and observed a white male in the SUV. The vehicle brake lights and reverse lights were on, indicating movement. Officer Seamans parked his police cruiser ten to fifteen feet behind the SUV, approaching the vehicle without activating his emergency lights or siren.

When Officer Seamans exited his cruiser, he noticed the color of the SUV was grey. Officer Seamans concluded that the caller was likely mistaken, just as he was, due to the poor lighting conditions. As Officer Seamans walked toward the front of the SUV, the reverse lights turned off and the SUV was placed in park. Officer Seamans began to speak with the operator, Appellant, when he noticed a strong odor of alcohol emanating from the vehicle. Appellant had glassy, blood-shot eyes and was slurring his speech. Believing that Appellant was intoxicated, Officer Seamans asked him to turn off the engine and step out of the vehicle.

Officer Seamans watched Appellant get out of the SUV, swaying and discarding a breath mint that had been in his mouth. Seconds later, Officer Seamans detected a strong odor of alcohol on [Appellant's] breath. [Appellant] was subsequently arrested for DUI.

(Trial Court Opinion, 2/12/15, at 1-2).

On December 5, 2013, Appellant filed a motion to suppress evidence, which the trial court denied on October 1, 2014, following a hearing. The case proceeded to a bench trial on December 3, 2014, and the trial court found Appellant guilty of the above-stated offense. It sentenced Appellant

- 2 -

to a term of not less than five days nor more than six months' incarceration. This timely appeal followed.[2]

Appellant raises the following issue for our review:

I.    Did the trial court err in determining that the officer's interaction with [Appellant] was an investigatory stop which was supported by reasonable suspicion[?]

(Appellant's Brief, at 4).

Our standard of review is well-settled:

The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Leonard***, 951 A.2d 393, 396 (Pa. Super. 2008) (citation omitted).

"Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Houck***, 102 A.3d 443, 455 (Pa. Super. 2014) (citation and internal quotation marks omitted).

_____

[2] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on December 23, 2014. ***See*** Pa.R.A.P. 1925(b). The trial court filed an opinion on February 12, 2015. ***See*** Pa.R.A.P. 1925(a).

In his sole issue on appeal, Appellant argues that the trial court erred in determining that the investigatory stop was supported by reasonable suspicion. (*See* Appellant's Brief, at 7-11). Specifically, he claims that Officer Seamans lacked reasonable suspicion because his grey SUV did not match the reported description of the fleeing green-colored SUV involved in the disturbance. (*See id.* at 10-11). He further maintains that Officer Seamans should have ceased the interaction upon realizing that Appellant's SUV was grey, and did not match the description of the green SUV reported in the call to police. (*See id.* at 10). This issue lacks merit.

> [O]ur courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a particular search or seizure conforms to the requirements of U.S. CONST. amend IV and P.A. CONST. art. I, § 8.
>
> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013), *appeal denied*, 87 A.3d 320 (Pa. 2014) (case citation omitted).

> . . . [P]rior to stopping a citizen for investigative purposes, a police officer must possess at least reasonable suspicion that of that individual's involvement in illegal activity based on the totality of the circumstances as known to the officer. Nevertheless,

> [r]easonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Howard*, 64 A.3d 1082, 1088 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (citations and quotation marks omitted).

Furthermore, "[a] finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts." *Commonwealth v. Muhammed*, 992 A.2d 897, 901 (Pa. Super. 2010) (citation omitted). "Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable." *Id*. (citation omitted).

Here, the record reflects that, at approximately midnight, Officer Seamans responded to a report of a disturbance behind a car wash, and that a white male involved in the incident had fled from the scene in a dark green SUV. (*See* N.T. Suppression Hearing, 8/29/14, at 4-6, 24). As Officer Seamans patrolled the area, he observed a dark colored SUV parked across two parking spots in a "[v]ery dark" municipal parking lot approximately two blocks from the car wash. (*Id.* at 9; *see id.* at 8-10). As he pulled into the

parking lot, he observed a white male sitting in the driver's seat. (**See id.** at 11). Officer Seamans testified that he pulled up behind the SUV because "from the way it was parked in the lot it looked like it was dark green, which had matched the description of the vehicle that was involved in the disturbance and subsequently fled the disturbance." (**Id.** at 12). He explained that he realized the SUV was grey while he was walking towards it, and that he continued to approach it:

> [b]ecause I know a lot of times witness statements are not exactly correct and the information we always get from radio isn't always correct. Because of the close relation to where the car wash was and the vehicle had fled, and the colors, especially at nighttime, could be closely resembled. I mean I made the mistake up until I was a few feet from the car, so an eyewitness could very well do the same. . . .

(**Id.** at 20; **see id.** at 19).

Based on the foregoing, viewing the totality of the circumstances, we agree with the trial court that Officer Seamans articulated the requisite reasonable suspicion to approach Appellant's vehicle, and that his mistake regarding the color of the SUV was objectively reasonable. (**See** Trial Ct. Op., 2/12/15, at 5); **see also Howard**, **supra** at 1088; **Muhammed**, **supra** at 901. Therefore, we conclude that the court properly denied the motion to suppress evidence. **See Leonard**, **supra** at 396. Accordingly, Appellant's sole issue on appeal does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/18/2015</u>