J-A06032-18

2018 PA Super 150

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KAELIN THOMAS ANT WEBER, | : | |
| | : | |
| Appellant | : | No. 118 WDA 2017 |

Appeal from the Judgment of Sentence December 19, 2016
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000456-2016

BEFORE:   BENDER, P.J.E., SHOGAN, and STRASSBURGER, JJ.*

DISSENTING OPINION BY STRASSBURGER, J.:        **FILED  JUNE 05, 2018**

Because the trial court did not err in precluding Appellant from presenting the statutory defense, I respectfully dissent.

In considering Appellant's issue, we first point out that there is only one published opinion from this Court addressing this subsection of the statute. That case, **_Commonwealth v. Bowen_**, 55 A.3d 1254 (Pa. Super. 2012), presents an example of a "typical" situation under this statute.[1]  Bowen was

_____

[1] The trial court explained the following in support of its conclusion.

> Typically, a defense based on 75 Pa.C.S. § 3733(c), is used when the police initiate a traffic stop and a defendant is charged with not stopping because he had a reasonable concern for his safety. This scenario is not what happened with Appellant, who did initially stop for police.  Appellant did not move from an unsafe location to a safe one, he did just the opposite by crossing several lanes of a busy highway at a high rate of speed.

Trial Court Opinion, 6/6/2017, at 5.

*Retired Senior Judge assigned to the Superior Court.

convicted of, *inter alia*, fleeing and eluding, when he did not stop his vehicle once a police car activated its lights and sirens, but instead proceeded to drive erratically at between 70 and 100 miles per hour for approximately 30 minutes. "Eventually spike strips were deployed to stop [Bowen's] vehicle." *Id*. at 1257. Bowen drove over the spike strips, and an officer was able to maneuver in front of Bowen's vehicle in order to stop it.

Bowen testified in his defense, explaining that he had a good faith concern for his safety because he "had a paintball gun in the car that resembled a machine gun [and] wanted to notify the police that he had the gun before he pulled over." *Id*. at 1259. The trial court instructed the jury on the subsection 3733(c)(2) defense. Nevertheless, the jury convicted Bowen of fleeing and eluding. On appeal, Bowen argued "that the Commonwealth insufficiently disproved his affirmative defense," contending that "he carried his burden by demonstrating that his failure to stop was based upon a good faith concern for his personal safety." *Id*. at 1261-62. This Court concluded that Bowen's argument was a challenge to the weight of the evidence, not the sufficiency of the evidence, because he was claiming that the jury should have believed his testimony. Thus, this Court concluded that Bowen's sufficiency-of-the-evidence claim was without merit.

While **Bowen** is instructive, it does not answer the question of whether the trial court erred in precluding the defense. The court of appeals for the District of Columbia considered a similar situation.

In that case, a Metro Transit Officer "observed a vehicle blocking the flow of traffic." ***Barnhardt v. U.S.***, 954 A.2d 973, 975 (D.C. Ct. App. 2008). The engine was running, but the vehicle did not proceed when the light turned green and remained parked through two cycles of the light. The officer sounded his emergency air horn and activated his emergency lights, but the vehicle did not move. Other officers in uniform arrived on the scene in marked police vehicles. It appeared the driver of the vehicle, Barnhardt, was asleep. An officer "banged his flashlight on the window, [and] Barnhardt sat up and looked around." ***Id***. When Barnhardt woke up, he began to reach for the center console, and all officers drew their service weapons and pointed them at Barnhardt. One officer "called out 'crossfire' to warn the other officers not to shoot one another." ***Id***. Barnhardt continued to "reach for something" and an officer "unsuccessfully tried to break the driver's side window with his asp." ***Id***. Barnhardt then put his vehicle in reverse, backed up at a high rate of speed, and fled the scene in a dangerous fashion. A chase ensued, and "police were finally able to box [] Barnhardt in and apprehend him." ***Id***.

Barnhardt was charged with, *inter alia*, fleeing and eluding a police officer. At trial, Barnhardt's defense was that "he failed to stop because he was afraid for his life."[2] ***Id***. Barnhardt's counsel requested that the jury be

_____

[2] Barnhardt did not testify, but offered testimony from his sister about Barnhardt calling her while fleeing and sounding "scared and upset." ***Id***. at 975.

instructed "on the affirmative defense provided by the statute."[3] *Id*. The trial court denied that request because Barnhardt himself did not testify, and Barnhardt was convicted. On appeal, Barnhardt claimed the trial court erred in failing to instruct the jury on this defense.

The D.C. Court of Appeals affirmed Barnhardt's judgment of sentence. In doing so, the court disagreed with the trial court that the reason the defense failed was because Barnhardt did not testify. Rather, it concluded that the defense did not apply under the circumstances presented in the case. Relying on the language of the statute, the court began its "analysis at the point when the police officers pursue and follow [] Barnhardt and signal him to stop." *Id*. at 977.

> [T]here was no mistaking that [Barnhardt] was being pursued by police officers who wore uniforms, drove marked cars, and used emergency lights and horns to demonstrate authority and urgency. Most notably, [] Barnhardt never voluntarily stopped for the police…. While no one factor is dispositive to be entitled to assert the defense, [] Barnhardt failed to satisfy any of the factors.
>
> ***
>
> Even assuming without concluding that [] Barnhardt had a "reasonable fear" when he initially fled the police officer, no jury could reasonably conclude that [] Barnhardt failed to stop because he lacked a safe place and/or method to pull over. Instead, this was a situation where he was recklessly trying to elude police officers whose identities were not in question.

*Id*. at 977-78.

_____

[3] That defense, codified D.C. Code § 50-2201.05b, is the exact same defense provided for in 75 Pa.C.S. § 3733(c)(2).

Similarly, in this case at bar, Appellant has failed to satisfy any factors set forth in section 3733(c)(2). Furthermore, and even more compelling in this case, is the fact that Appellant never stopped for police at any point. In fact, he did not even turn himself into police at a later time; rather, he was arrested months later by chance. I conclude that this statute applies to those who fail to stop **immediately**,[4] but do stop at some point thereafter.

Based on the foregoing, I would conclude that the trial court did not err in precluding this defense,[5] and would affirm Appellant's judgment of sentence.

_____

[4] **See Commonwealth v. Morris**, 958 A.2d 569, 579 (Pa. Super. 2008) ("A presumption … exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.").

[5] I recognize that the trial court's rationale was different. However, "[t]his Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis." **Commonwealth v. Williams**, 73 A.3d 609, 620 n.4 (Pa. Super. 2013).