J-S93021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAREEM PINOCK | |
| Appellant | No. 2851 EDA 2015 |

Appeal from the Judgment of Sentence dated September 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-0005543-2014

BEFORE:  DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MARCH 31, 2017**

Appellant, Kareem Pinock, appeals from the judgment of sentence imposed after the trial court convicted him of possessing a controlled substance with the intent to deliver (PWID) and knowingly or intentionally possessing a controlled substance.[1]  Appellant challenges the denial of his suppression motion on the basis of the limitations on the collective knowledge doctrine that we set forth in **Commonwealth v. Yong**, 120 A.3d 299 (Pa. Super. 2015), **appeal granted**, 137 A.3d 573 (Pa. 2016).  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §780-113(a)(30) and (16).

The lower court[2] summarized the facts presented at the June 29, 2015 suppression hearing as follows:

At the suppression hearing, Police Officer Gina Jackson of the Narcotics Field Unit of the Philadelphia Police Department testified that on April 6, 2014, she received information that narcotics were being sold out of 5252 Spruce Street. Based on this information, Officer Jackson and her partner, Officer Kuhn (first name not given) set up a surveillance of the location on April 7, 2014. The entrance to the property is on 53rd Street and Officer Jackson was able to observe a black male standing on the landing area of the property. A few people walked up to the male, engage[d] him in a brief conversation, enter[ed] the residence for a few minutes, and then le[ft] the area.

Based on what she observed, Officer Jackson believed narcotic sales were taking place out of the residence, so she contacted two other officers from her squad, Officers Oglesby and Waters (first names not given) and told them that she wanted them to contact a confidential informant (CI) to have that CI sent to the property to buy narcotics. Officers Oglesby and Waters informed her that a CI was given pre-recorded buy money and was en route to her location. Officer Jackson observed the CI walk up to the location and after a brief conversation with the black male she had previously observed on the landing, the CI went inside the residence as the others had previously done. The CI exited moments later and returned to Officers Oglesby and Waters with two (2) clear Ziploc packets with red markings containing crack cocaine.

On April 16, 2014, Officer Jackson and Officer Kuhn set up a second surveillance of the residence. On this day, a black female (later identified as Sharon Rucker) was standing on the landing. Officer Jackson contacted Officer Oglesby and Officer Waters and another CI was given pre-recorded buy money and sent to the residence to purchase narcotics. The CI returned to Officers Oglesby and Waters with two (2) pink-tinted Ziploc

_____

[2] The trial court opinion was authored by the Honorable Jeffrey P. Minehart, Jr.; however, the Honorable Vincent N. Melchiorre presided over the suppression hearing, bench trial, and sentencing in this case.

packets contain[ing] crack cocaine. After the CI left, Officers Jackson and Kuhn remained at the location for about 20 more minutes. During those 20 minutes, numerous individuals went up the steps of the landing, had a brief conversation with Ms. Rucker, after which either both the unknown person and Ms. Rucker, or just Ms. Rucker alone briefly entered the residence and returned to the landing before the individual left the area.

On April 21, 2014, a third surveillance was set up at the residence. Officers Rhoades and Hardy (first names not given) had control of the CI this day. As on the previous two (2) surveillances, Officer Jackson was in constant contact with Officers Rhoades and Hardy. On this day, the CI had contact with Ms. Rucker and after their transaction, returned to Officers Rhoades and Hardy with two (2) orange tinted Ziploc packets containing crack cocaine. A fourth surveillance the next day netted the same result with the CI returning with two (2) purple tinted Ziploc packets containing crack cocaine.

On April 23, 2014, a final surveillance of the residence was conducted by Officers Jackson and Kuhn. Officer Jackson had a search warrant for the residence with her. On this date, [Appellant] was standing on the landing where Ms. Rucker and the first unidentified black male had been standing on the previous occasions. Officer Jackson contacted Officers Rhoades and Hardy to have the CI go to the location to purchase narcotics. The CI was given $20.00 in pre-recorded buy money. Officer Jackson observed the CI walk up the steps to the landing, have a brief conversation with [Appellant] and hand [Appellant] the money. [Appellant] then entered the residence as the CI stuck his body partially inside the residence. The CI left the residence and returned to Officers Rhoades and Hardy with two (2) orange tinted Ziploc packets containing crack cocaine.

Within 15 minutes of the last transaction involving the CI, police executed the search warrant for the residence. [Appellant] was not inside the residence when the warrant was executed; he was about 10 feet away on the corner of 53rd and Delancy Streets. Officer Jackson told Officer Waters to stop [Appellant] because of the interactions she observed between the CI and [Appellant]. He was stopped and $20.00 in pre-recorded buy money was recovered from him.

Counsel stipulated to the name of the second female (Iris Carter Marsh) found in the residence when the search warrant

- 3 -

was executed. One (1) orange tinted Ziploc packet containing crack cocaine and one (1) clear packet containing marijuana was attributed to Ms. Marsh.

After argument, the suppression motion was denied.

Trial Court Opinion, 1/13/16, at 2–5 (citations to notes of testimony omitted).

Immediately after the denial of the suppression motion, Appellant proceeded to trial, after which the trial court rendered its verdicts. Sentencing was deferred to September 4, 2015, when the trial court sentenced Appellant to 1½ to 3 years' incarceration, followed by 3 years' probation for PWID, with no further penalty imposed for knowingly or intentionally possessing a controlled substance. Appellant did not file a post-sentence motion.

Meanwhile, two weeks after the trial court denied Appellant's suppression motion, this Court decided **Yong**, in which we examined the scope of the "collective knowledge doctrine" (sometimes called the "fellow-officer rule"), which permits a police officer to make an arrest on the basis of information provided by other members of the police force.[3] In **Yong**, a

---

[3] After surveying the case law, the Court in **Yong** described the collective knowledge doctrine as follows:

[T]he collective knowledge doctrine serves an agency function. When a police officer instructs or requests another officer to make an arrest, the arresting officer stands in the shoes of the instructing officer and shares in his or her knowledge. . . . [A]n arresting officer need not possess encyclopedic knowledge of the underlying facts supporting probable cause. Instead, he or she

*(Footnote Continued Next Page)*

police officer (McCook) observed Yong engaging in activities suggesting that he was committing unlawful narcotics offenses. Police then executed a warrant to search the building in which Yong was present, and when they did, a second police officer (Gibson) arrested Yong and found an unlawful firearm on his person. McCook did not tell Gibson to arrest Yong and neither McCook nor any other member of the police force provided Gibson with any information about Yong that would support the arrest. *Yong*, 120 A.3d at 302-03. Yong was convicted after he unsuccessfully moved to suppress the gun and other physical evidence obtained during the arrest and search, arguing that Gibson lacked personal knowledge sufficient to permit him to arrest and search Yong. *Id.* at 303. We reversed, holding that the collective knowledge doctrine does not permit an officer who does not have personal knowledge constituting probable cause to make an arrest unless that officer acts on instructions from a fellow officer who does have such knowledge of the facts. *Id.* at 310-11.[4]

*(Footnote Continued)* —————————

> may rely upon an instruction to arrest from another officer who possesses the required knowledge.

*Yong*, 120 A.3d at 307.

[4] The Supreme Court has allowed the Commonwealth's appeal from our decision in *Yong*. The order granting the petition for allowance of appeal states:

> Did the Superior Court – in contravention of the United States Supreme Court precedent and overwhelming supporting authority from this Court, the Superior Court itself, and virtually

*(Footnote Continued Next Page)*

On September 16, 2015, Appellant filed a timely notice of appeal. In his brief, Appellant presents the following issue:

> Did the trial court err when it denied [Appellant's] pre-trial motion to suppress physical evidence – *i.e.* pre-recorded buy money recovered from his pocket – as the arresting officer did not have probable cause to stop, detain or search [Appellant] at the time that that officer did so where, at the time the arresting officer seized and searched [Appellant], that officer did not have facts and circumstances within his knowledge that were reasonably trustworthy and sufficient to warrant a person of reasonable caution to believe that [Appellant] committed or [wa]s committing a crime?

Appellant's Brief at 5. The essence of Appellant's argument is that he was seized and searched in contravention of **Yong**. **See generally** Appellant's Brief at 17-26.

Our review of a trial court's suppression ruling is guided by the following:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> every federal and state court – err in holding that the Fourth Amendment does not permit a member of a close group of officers working as a team to act on the collective knowledge of that team, absent a directive or instruction issued by an officer who possesses probable cause?

*Commonwealth v. Yong*, 137 A.3d 573 (Pa. 2016).

- 6 -

as a whole. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010) (citations, quotations, and ellipses omitted). Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. *See In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1083–1087 (2013).

*Commonwealth v. Mathis*, 125 A.3d 780, 783 (Pa. Super. 2015), *appeal granted*, 134 A.3d 51 (Pa. 2016).[5]

Further, we recognize the legal parameters during police encounters as follows:

[T]here are three levels of encounter that aid courts in conducting search and seizure analyses.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such

_____

[5] The Supreme Court's allowance of the appeal in *Mathis* did not relate to the correctness of the standard of review stated in the text. The Court granted allocator to decide:

Whether, as a matter of first impression, the Superior Court erred in affirming the trial court's decision denying [petitioner's] motion to suppress evidence where state parole agents lacked authority and subsequently reasonable suspicion to detain [petitioner] and conduct an investigative detention in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

134 A.3d at 51.

coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted), *appeal denied*, ––– Pa. ––––, 87 A.3d 320 (2014).

. . .

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014). It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 109 S.Ct. 1581 (1989) (internal quotation marks and citation omitted). . . . In addition, an officer may conduct a limited search, *i.e.*, a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous. *United States v. Place*, 103 S.Ct. 2637 (1983) (citation omitted).

*Commonwealth v. Carter*, 105 A.3d 765, 768–69 (Pa. Super. 2014), *appeal denied*, 117 A.3d 295 (Pa. 2015).

Appellant asserts that he is entitled to relief because his case "is completely subsumed within the decision of the *Yong* Court." Appellant's Brief at 17. He maintains that *Yong* controls our disposition because the critical information constituting probable cause was possessed by members of the police force other than Officer Waters, who was the officer who took him into custody, searched him, and seized the currency used as evidence against him at trial. Appellant's Brief at 17-18. Appellant claims that the officer who possessed personal information about his activities, Officer Jackson, told Officer Waters "not to stop and arrest" him, but only to "detain

- 8 -

him for investigation." *Id.* at 18. Therefore, Appellant asserts that Officer Waters "exceeded the scope of the express directions given to him by his fellow officer." *Id.* at 26. Because Officer Jackson told Officer Waters only to stop Appellant and not to arrest him, Appellant claims, only knowledge sufficient for an investigative stop was imputed to Officer Waters and not knowledge sufficient for a "full custodial arrest." *Id.* at 25. As a result, Appellant maintains he was arrested by an officer who lacked sufficient information for probable cause, and that his request for suppression was improperly denied.

In response, the Commonwealth asserts that "*Yong* does not control the instant case on its face." Commonwealth Brief at 13. The Commonwealth explains:

> [A]s defendant himself concedes, here "the arresting officer acted upon direction from another officer — namely, Officer Jackson" (Brief for Appellant, 17). The fact that the arresting officer (Waters) was instructed to act by an officer who possessed probable cause places this case squarely in line with those embracing the vertical imputation of knowledge from an instructing officer to an acting officer. As the *Yong* court noted, "Pennsylvania courts have consistently applied this version of the doctrine for several decades, with little controversy." 120 A.3d at 308.

*Id.* at 13-14. With respect to Appellant's argument that Officer Jackson only directed Officer Waters to stop Appellant and that, as a result, knowledge sufficient only for an investigative stop was imputed from Officer Jackson to Officer Waters, the Commonwealth argues that the collective knowledge doctrine "imputes knowledge, not a legal assessment of the formal

implications of that knowledge" or "a legal determination of whether those facts amount to either reasonable suspicion or probable cause." ***Id.*** at 8, 15.[6]

_____

[6] The Commonwealth also contends that Appellant waived this issue because he failed to present it to the trial court, which "did not address defendant's current claim . . . in its Pa.R.A.P. 1925(a) opinion." Commonwealth Brief at 7, 10. Under Appellate Rule 302(a), "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." As we have noted, ***Yong*** was not decided until after Appellant's conviction. In connection with his appeal, Appellant's Rule 1925(b) statement framed his issue in a manner similar to the question now presented in his appellate brief, which focuses on Officer Waters' lack of probable cause in a manner sufficient to encompass the collective knowledge doctrine, as follows:

> The court erred when it denied defendant's pre-trial motion to suppress pre-recorded buy money recovered from his pocket as the arresting officer did not have probable cause to stop, detain or search defendant at the time that that officer – Officer Waters – did so. Specifically, at the time Officer Waters seized and searched defendant, Officer Waters did not have facts and circumstances within his knowledge that were reasonably trustworthy and sufficient to warrant a person of reasonable caution to believe that defendant committed or is committing a crime.

Pa.R.A.P. 1925(b) Statement, 11/21/15. Under Rule 1925(b)(4)(v), "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court," and we note that the trial court addressed Appellant's issue by stating: "Despite Defendant's argument to the contrary, Officer Waters had probable cause to stop and arrest Defendant based on Officer Jackson's (the assigned investigator for this particular surveillance operation) directive to stop the Defendant because of the interaction she observed between the Defendant and the CI on April 23, 2014." Tr. Ct. R. 1925(a) Op. at 7 (footnote omitted). On these facts, we decline to find waiver. In any event, as explained in the text, Appellant's issue lacks merit.

First, we agree with the Commonwealth that this case fits squarely within the collective knowledge doctrine set forth in *Yong* insofar as Officer Waters was acting at the direction of Officer Jackson. This case is unlike the situation in *Yong*, where, according to the suppression record, the arresting officer arrested Yong without any direction from a fellow officer and, therefore, without any knowledge from that fellow officer being imputed to him.

Second, we reject Appellant's contention that, under *Yong*, the knowledge imputed to a fellow officer is limited by the nature of the instruction that the fellow officer receives. Rather, we agree with the Commonwealth that it is the *knowledge* of the *facts* that is imputed to the police officer, not a legal determination of whether those facts amount to reasonable suspicion or probable cause.

In *Yong*, we recited the facts relevant to the undercover narcotics investigation in that case as follows:

> Yong was standing in the first-floor living room. Without being prompted to do so by any other officer, and without knowing that other officers had observed Yong's prior drug activity, Officer Gerald Gibson immediately arrested Yong. Officer Gibson discovered a loaded .38 revolver concealed under Yong's waistband. . . . **Officer McCook did not testify that he informed Officer Gibson of Yong's role in the narcotics transaction on September 21, 2011, nor did Officer McCook testify that he instructed Officer Gibson to arrest and/or search Yong**.

*Id.* at 303 (emphasis added). Based on these facts, we concluded that "the application of collective knowledge doctrine" to the arresting officer

- 11 -

"stretched the rule beyond its breaking point" because there was no evidence in the record that the arresting officer was "ordered or directed" to arrest Yong; "received information justifying Yong's arrest"; or "received information, which, coupled with facts that he personally observed, provided probable cause to arrest Yong." *Id.* at 302, 307.  We further noted that the arresting officer did not testify at the suppression hearing, and we could not, "based on the state of the record," impute another officer's knowledge that Yong had participated in a prior drug transaction to the arresting officer.  *Id.* at 302, 310-311.

In rendering our decision, we contrasted the U.S. Supreme Court's decision in *Whiteley v. Warden*, 401 U.S. 560 (1971), and quoted the Supreme Court's discussion of that case in *United States v. Hensley*, 469 U.S. 221 (1985), as follows:

> *Whiteley* supports the proposition that, when evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its **admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest. It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance.** In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.

*Yong*, 120 A.3d at 306-07, quoting *Hensley*, 469 U.S. at 231 (emphasis added).  We explained that the case law in this area is based on an

"assumption" that fellow officers possess knowledge sufficient for other members of the police force to act. 120 A.3d at 306. In addition, we pointed out:

> ***The result we reach in this case is not a consequence of a hyper-technical legal rule***. ***The collective knowledge doctrine unquestionably authorizes police officers to act upon information or instructions from their fellow officers.*** ***Whiteley***, 401 U.S. at 568; ***Hensley***, 469 U.S. at 231. At Yong's suppression hearing, it was the Commonwealth's burden to establish that Officer McCook directed Officer Gibson to arrest Yong. ***See*** Pa.R.Crim.P. 581 ("The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."). The suppression record before us lacks any evidence to that effect. We are compelled to conclude that Yong's arrest was unconstitutional.

***Id.*** at 310-311 (emphasis added).

Nothing in ***Yong*** suggested that the "collective knowledge" of fellow officers that is imputed to an officer making a stop or arrest is in any way limited by the nature of the instruction given to that officer, or that the instruction successfully imputes only that portion of the instructing officer's knowledge that is necessary to comply with the directive. Rather, we said that "the arresting officer stands in the shoes of the instructing officer and shares in his or her knowledge." 120 A.3d at 307. In light of this understanding of the collective knowledge doctrine as expressed in ***Yong***, we hold that even if Officer Jackson instructed Officer Waters only to stop, but not to arrest, Appellant, Officer Waters' arrest of Appellant was valid if

Officer Jackson possessed knowledge of facts that would constitute probable cause, because all of that knowledge was imputed to Officer Waters.

Consistent with the foregoing, we have carefully reviewed the transcript from Appellant's suppression hearing, which, like that in **Yong**, lacks testimony from the arresting officer.[7] The sole witness was the "knowledge officer" – Officer Jackson. She recounted her investigation, on April 6-7, 16, 21-22, and 23, 2014, of drug activity occurring at 5252 Spruce Street. N.T., 6/29/15, at 11-32. Officer Jackson worked with Officer Waters from the inception of the investigation. **Id.** at 16. Her communications with Officer Waters included "constant radio contact" and "relaying to him what I needed to be done as far as sending a CI to that location." **Id.**

Officer Jackson stated that on August 23, 2014, she already had a search warrant for 5252 Spruce Street when she observed the CI hand Appellant pre-recorded buy money and Appellant then enter 5252 Spruce Street for approximately one minute and exit, after which the CI returned to police and turned over two Ziploc packets. **Id.** at 30, 58. Until that day, Officer Jackson had seen Appellant "in the vicinity" and "always out there . . . with a group of guys," but not specifically at 5252 Spruce Street. **Id.** at 32. When Officer Jackson called for backup to serve the search warrant, Appellant was "standing on the corner" about ten feet from 5252 Spruce

---

[7] Also as in **Yong**, the arresting officer was present and testified during the trial.

Street. *Id.* at 36-37. Officer Jackson testified that she instructed Officer Waters to stop Appellant "because of the interaction that I observed the CI have with the defendant." *Id.* at 42. On cross-examination, Officer Jackson stated, "I told them not to – not to stop him and arrest him. He was being detained for questioning. . . . [f]or investigation of narcotics. No, he was not free to leave." *Id.* at 67-68.

The foregoing recitation shows that, unlike the evidence in *Yong*, the evidence from the suppression hearing in this case establishes that the "knowledge officer" – Officer Jackson – informed the arresting officer of Appellant's role in the narcotics transaction and instructed him to detain Appellant "for investigation of narcotics." *Id.* Nevertheless, Officer Waters then arrested Appellant. Notably, Appellant does not argue that Officer Jackson lacked probable cause to arrest him. "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances." *Commonwealth v. Weaver*, 76 A.3d 562, 565 (Pa. Super. 2013) (citations omitted).

The totality of circumstances support a finding that Officer Jackson had probable cause to arrest Appellant. In addition, the trial court indicated its belief that Officer Jackson possessed probable cause when it stated:

> [T]he officer – officer's observations were direct and specific. And she's the one that made the observations. She had her backup in place. She's on constant radio – or radio contact, she testified to.
>
> She testified . . . that the CI was searched and given prerecorded buy money. She testified clearly as to what she personally observed. And within a very short period of time of her observation, the warrant was executed. The defendant was stopped, and he had the prerecorded buy money on him.
>
> At that time, you have to take all the facts and circumstances that are going on over these many days, which is people going in and out for minutes at a time and the indicia that happens with regular drug activity and drug sales. That on the day they were going to execute the search warrant, it was the defendant on the porch and [Officer Jackson] saw a hand-to hand-exchange. . . .
>
> The question is not whether the officer believes or correct – likely more, likely not to be true or false, but the – only probability, not even a prima facie showing, in determining whether probable cause exist[s], you apply the totality of the circumstances test.

N.T., 6/29/15, at 87-89.

Based on the foregoing, Officer Jackson had probable cause to arrest Appellant. Accordingly, under the collective knowledge doctrine, Officer Jackson's knowledge became imputed to Officer Waters once she instructed him to act, and because Officer Jackson possessed probable cause to arrest Appellant, Officer Waters' arrest and search of Appellant was permissible.

Therefore, we discern no error in the trial court's denial of Appellant's suppression motion and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Dubow joins the memorandum.

Judge Platt files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017